Thank you. Please be seated. This next case is case number 4-16-0857 Pope Barney as Independent Administrator of the Estate of Kitty Mullins as Appellant versus Matthew Gerdes, Larry Thorndike, University of Lutheran Ministry of Bloomington Normal, St. Paul's Evangelical Lutheran Church, Roberts, Illinois. Appearing for the Appellant is Attorney Jacob Banaszak. Is that right? Is that how you pronounce your last name? Okay, thank you. And for Appellees, for St. Paul's Evangelical Lutheran Church is Attorney Dana Meyer, correct? And for Mr. Thorndike is Attorney Michael Walsh. And it's my understanding that the Appellees have agreed to split their time ten minutes apiece. Is that correct? Alright, who will argue first? Okay, Mr. Walsh, you will. Alright, thank you. Mr. Banaszak, then you may proceed. May it please the Court, my name is Jacob Banaszak and I represent Pope Barney as Independent Administrator of the Estate of Kitty Mullins, Plaintiff Appellant. I'm here to ask this Court to reverse the grants of summary judgment which were entered in the Circuit Court in favor of Larry Thorndike and St. Paul's. I'm going to use about half my time for each defendant. If it pleases the Court, I'm going to begin with St. Paul's. I know the Court is familiar with the facts, but they're very brief. I'm going to go over them quickly. This matter stems from a two-party vehicle accident. Matthew Gerdes was driving one car and Kitty Mullins was driving the other car. Matthew Gerdes failed to yield and struck the car driven by Kitty Mullins. Ultimately, the injuries that she sustained ended her life on that day. There's also evidence that at the time of the accident, Matthew Gerdes was on the phone with Larry Thorndike, his boss. He was employed by St. Paul's Church and also by Bloomington Normal. There's evidence that he was on the phone discussing an issue of a plumbing issue at his house which was owned by the church. During the accident, he was on his way to perform services for his other employer, Bloomington Normal. Moving to St. Paul's. Summary judgment should have absolutely not been entered in the circuit court because there's a jury issue as to whether Matthew Gerdes was acting in the scope of his employment for St. Paul's at the time of the accident as he was on the phone discussing church issues with his employer at the time of the accident. The only way that summary judgment should be granted in a scope of employment issue is if the court finds as a matter of law that no reasonable juror could find that he was acting in the scope of his employment. That is not the case here. Illinois courts use the restatement, section 228 of torts, to analyze whether an agent is acting in the scope of his employment. In our case, all three of the criteria which is used is satisfied. I'm going to go over them one by one. So let me ask you this. What would you say that the respondent, the defendant in this case, was hired by St. Paul's for? What was the nature of his employment with him? I'm glad you asked that. That leads me right into my first point of the first factor is, is the conduct of the kind that he was employed to do? He was employed to be a pastor, a preacher. That, I think, is clear. However, he had duties and requirements other than preaching to the people of Roberts, Illinois. The first factor is broad and includes not only authorized conduct, but also conduct which is incidental to the work that he was hired to do. Section 229 of the restatement sheds some light on factors to consider for unauthorized acts which are nevertheless found to be within the scope of employment. But in this case, we don't even have to go there because the act of calling and getting authority from Thorndike for the repair was required of him. It was required of him by his employer. He was satisfying an obligation. The Illinois Supreme Court in Badger v. Blessing in holding that the defendant nurse was not acting in the scope of her employment or that no juror could find that she was, reasoned that divulging confidential information was explicitly not allowed and forbidden by her employer. Contrast that with this court's holding in Rodman v. CSX where this court held that there was a jury issue as to whether the defendant was acting in the scope of his employment when he was driving to clock out at the end of his workday because the reasoning they used is clocking out was required of him by his employer. As is the case in our matter, getting authority for this repair was required of him by the church. It cannot be said that it has nothing to do with his employment. Therefore, that is why the first factor is satisfied. The second restatement factor... So they hired him to make phone calls letting someone know that a repair person was coming out to the parsonage to do some work? They hired him to be a preacher. However, he had duties and responsibilities and requirements which came along with his employment with the church. The church, as a part of his employment, allowed him to live in this house. They have an interest in making sure that the house is upkept and that they have a say in how much is spent on repairs and things of that nature. Moving on to the second restatement factor, that the conduct had to have occurred within the authorized time and space limitations. He...Garris was authorized to preach on Sundays. Besides that, he had free range to visit people. There's testimony he...both Thorndike and Garris testified that he would visit people throughout the week. His employer actually had no set schedule for him. He had an extremely wide and, I would argue, carte blanche type time and space limitations as far as preaching. He had gotten a phone call in the middle of the night. Furthermore, there's no evidence as to any method which was required of him to get this authority. He could have emailed, he could have called, he could have done it in person. I think it adds to the point that this call, getting authority which was required of him, was within these authorized time and space limitations. Finally, the third restatement factor is that the act must be in some way, at least in part, to benefit the employer. I believe this is also satisfied for two reasons. One, and most obvious, the church owns the house. The church has an interest in making sure that the house is upkept and the repairs are made. Him getting authority and him repairing the house directly benefits the church. Secondly, the process of getting authority, as Defendant Thorndike testified, they want to know what's going on with the house because they own it. The process of getting authority allows the church to control what is done to their property, how much is spent on repairs and things of that nature. Therefore, it cannot be said that relaying the estimate was not motivated by a desire to serve as an employer. For those reasons, I believe all three of the restatement factors are clearly satisfied. His living in the house and the repairs were so incidental and intertwined with his employment for the church that analyzed through Illinois law and scope of employment law, it absolutely cannot be said that a reasonable jury could not find that he was acting in the scope of his employment as he was on the phone with his employer regarding a church-owned property. Therefore, I would ask that this Honorable Court reverse the finding of the circuit court and remand for further proceedings. If there are no other questions regarding St. Paul's, I'm going to move on to Mr. Thorndike. As far as Defendant Thorndike, I'm going to give a brief duty analysis and explain how common law negligence and out-of-state case law should extend a duty to Larry Thorndike as their remote caller in this case. A duty is whether a defendant has an obligation to conform his conduct, so as not to place another person in unreasonable harm. In determining whether a duty exists, Illinois courts typically balance the reasonable foreseeability of an injury occurring, the likelihood of the injury occurring, and they balance that against the magnitude of burden of guarding against the injury and the consequences of placing that burden on the defendant, all in the backdrop of public policy concerns. I would posit, in this case, the reasonable foreseeability and the likelihood of injury of placing a phone call to somebody that he knows or should know is driving an automobile and dividing their attention between the road and the phone is catastrophic, and the foreseeability is obvious and monumental. Balance that against the burden placed on the defendant of not placing a phone call, I would posit as minimal. Well, counsel, you've cited some out-of-state decisions. Are you aware of any Illinois decisions holding someone to this type of duty? I am not, no. As far as I know, there is no Illinois case as of right now that would hold a remote caller liable. The obvious question is, how would a person making a phone call even know that someone is operating a motor vehicle? That is a great question. Do they pose a duty on someone when they're randomly making a phone call and they have no knowledge of the person? No, absolutely not. That is not what I'm arguing. I'm arguing, as the court in New Jersey held, to be an extremely limited duty, limited to people who know or have special knowledge that the person is driving. This counsel is going to argue that this case is going to come down to whether there's any evidence as to whether Larry Thorndike knew or should have known that Gerdes was driving. Then that brings me to the second question. Let's assume that one does know. Doesn't the driver have the opportunity to either not answer the phone or answer the phone? Yes, and I would say that as the New Jersey court held, the duty would apply when the person knows that the person is going to...  They held that there would be a limited duty when the person has reason to know that the person would text back. So I would argue that there's reason to know that the person would answer the phone. In our situation, defendant Thorndike was returning a phone call. I would argue he had reason to know that Matthew Gerdes was going to answer the call as he had a missed call from him a couple minutes ago. And so basically you're saying that he should be liable even though someone else is potentially making the decision to take a phone call and distract themselves from their driving. I'm arguing that placing the call in and of itself is negligent as it's placing others, namely the other motorists on the road, in unreasonable harm. In his brief, counsel argues that we can't, he relies on the Zimba case, that we cannot guard against other people's negligence. However, I would posit that applying this duty would hold the caller liable for his own negligence because it being in and of itself that the phone call is negligent as it is placing others in unreasonable harm. So even if the driver doesn't pick up, the caller is still liable for some type of negligence? If this duty would be applied and the caller knew or should have known that the driver was going to answer the phone call, I would say yes. Finally, counsel is going to argue that there is absolutely no evidence that Thorndike knew or should have known that Matthew Gators was driving. You can see that in his deposition testimony, Thorndike testified that he had no idea whether he was driving or where he was going. Did you bring forth any affidavit or anything to rebut that evidence? No, what I'm arguing is that there should be an inference allowed to be made by a juror that he did know or should have known that he was driving. There are no other questions? I don't see any. Thank you. Thank you, counsel. Mr. Walsh? May it please the court, counsel, Mike Walsh here on behalf of Larry Thorndike. I would respectfully ask that this court affirm the decision of the trial court to grant summary judgment in favor of Mr. Thorndike on counts three and four of the Third Amendment complaint. We are here before the court on a summary judgment motion. Therefore, the inquiry is are there any genuine issues of material fact that would require this case to go before the jury? The answer to that question is no. The evidence in this case is undisputed that at the time of this accident, Mr. Thorndike had absolutely no knowledge that Matthew Gators was driving a vehicle. That's what Mr. Thorndike testified to at his deposition. Mr. Gerdes testified at his deposition that he did not tell Mr. Thorndike he was in a vehicle at the time the call was made. And Mr. Gerdes also answered a request to admit facts wherein he stated that he had spoken to Mr. Thorndike on numerous occasions in the six-month period preceding the accident from different locations and different settings. There is absolutely no evidence in this case that Mr. Thorndike had any inkling that Mr. Gerdes was in a car. So on that evidence, the trial court was correct. What plaintiff's counsel is suggesting to this court is apparently the imposition of some sort of strict liability. The mere fact of making a phone call without any knowledge of where the recipient is located could constitute or will constitute negligence. And that's not the law in the state of Illinois. This is a negligence clause of action, so you've got to set forth facts to establish a duty. One of the elements of a duty is reasonable foreseeability, and the plaintiff has failed on that regard. And so I believe the evidence supports the trial court's ruling. There's no evidence to support proximate cause. There's no evidence to support the public policy argument raised by the plaintiff in the brief. There's no evidence that the Kubert v. Best case should have any application in the case. The simple fact of the matter remains is that, as I mentioned, Mr. Thorndike had no knowledge when he made the call that Mr. Gerdes was in a vehicle. You know, drivers going down the roadway all the time are bombarded by distractions. Advertisements, roadside signs, directions, turn left here. And it is their obligation to make sure that they are operating in compliance with the rules of the road and that they are not distracted. You cannot go, as plaintiff suggests, and extend some duty to some remote third caller who has no idea where the recipient is located. And beyond that, Mr. Gerdes, the essence is that you've got to have some sort of distraction in addition to the fact that there's a the caller knows that the recipient is in a car. And Mr. Gerdes testified that he wasn't distracted by the call. So the plaintiff has failed on both points, and these are the essential allegations of Counts 3 and 4 in the Third Amendment complaint. There's no evidence to support any of that. So in the absence of such evidence, the summary judgment is proper. So I would ask the court to affirm the ruling of the trial court, and in this case, as it relates to Mr. Thorndike. Thank you. All right. Thank you, Mr. Wells. Ms. Meyer. May it please the court? Dana Meyer, and I represent St. Paul's Evangelical Lutheran Church. And as the church, I kind of have, I'm kind of getting attacked from two ways. One is in regards to the actions of Larry Thorndike. And the second is in regards to the actions of Matt Gerdes. Now, I'm going to start with Mr. Gerdes because I think Plaintiff's Counsel has kind of focused in on the actions of Mr. Gerdes in regards to what he was doing at the time of this accident. Also, I believe that Counsel has already told you why Mr. Thorndike should not be held negligent. And of course, under Responding to Superior Theory, if the employee cannot be held negligent, then the employer cannot be held negligent. So if we look at the factors, and I do agree that Section 219 of the Restatement Second gives us three factors that must be fulfilled in order to show that an employee is acting within the scope of his employment at the time of an accident or injury. The first of those is, is it the type or kind of service that the employee is employed to perform? And I think that's where the biggest problem in this case is. Matthew Gerdes is not hired to take care of property. He's not a maintenance man. He's not a mechanic. He's not a carpenter. Matthew Gerdes is a minister. And one of those benefits of being a minister is, yes, he gets to live in a parsonage. That's one way churches get ministers to come work for them. It's a big benefit. But it's incidental to his employment. It's really more of akin to, more like a landlord-tenant relationship, but the consideration being the service he's providing to the church, not the payment of rent, like under a typical relationship. So in this case, we have to look at what Mr. Gerdes is doing at the time that this accident occurs. And he's operating his own personal automobile. He's not going to see a parishioner. He's not going to a church meeting. He's not driving from the parish to the church. He's driving to another church that he's employed by. Totally unrelated to St. Paul. Yes, Mr. Gerdes apparently chooses to make a phone call with his personal cell phone while he's operating that vehicle. And is that at all relevant to the agency inquiry, the fact that he was on a phone call? I don't believe it is. He could have been drafting a sermon at the wheel of the car and still not have fallen under the agency's definition of scope of employment here. Wouldn't that be your argument? Isn't your argument here that the claimed conduct that is the proper focus of the scope of employment inquiry, the driving, that is the conduct that was the injurious act here, not the calling, right? Correct. And so if he was driving within the scope of his employment, the plaintiff might have a proper respondeat superior claim, correct? Correct. And I think even several cases cited by plaintiffs indicate that. I think it's the CSX case where the employee is driving on property owned by the employer because he has to go from one building location to a second building location. And they said yes, that's within the scope of employment. The employer knows that they do that. Some of the supervisors had even required they park at one location but clock out at a different. So they said yes, that's clearly within the scope of employment. But that's not what we have here. We have Mr. Gerdes leaving really his personal residence and going to a second job. And I don't think we want to extend respondeat superior to cover that scenario. Well, clearly case law states that injuries that occur during the course of an individual's commute to work did not implicate respondeat superior, right? Correct. So we don't have liability based on respondeat superior if it's a straight up commute. Here the focus is, was he driving in the course and scope of his employment for your client's purposes relative to St. Paul's Evangelical Lutheran Church? Correct. And the simple answer that you would give is no. He was on his way to work at the University of Lutheran Ministry. That's right. Okay. And according to the badgent case, if you can't fulfill all three of those elements that you find under section 219 of the restatement second, then the claim of respondeat superior fails. So if we fail at that first element, then the dismissal based on the summary judgment should be upheld. Briefly looking at the second element in regards to does the action occur substantially within the authorized time, space, and limits, I think it's the same argument. Yes, he's a minister. So he has no set time other than the services he provides on Sunday morning. But he is not doing any action at this time on behalf of the church. Again, might be different even if he was going to visit a parishioner in the hospital. But he's not. He is driving to a second job, taking him outside the scope of time that is associated with St. Paul. And it's sort of supposing counsel is saying, well, yes, he was doing something for the church because he was talking to Mr. Thorndike about the parsonage and the plumbing repair that needed to occur. And I understand that. And again, I respectfully disagree with counsel in that we can't control when people decide to make phone calls or what people decide to do when they're operating their automobile. When we start doing that, then we take away the responsibility of the operator of an automobile to know their limitations. And that kind of gets back to, did Mr. Thorndike have any idea that Mr. Gerdes, one, was operating a car. Two, would choose to answer the phone if he's operating the car. And three, well, those are the basic ones. But the third one was he was returning a call to Mr. Gerdes. He may not have had any idea that Mr. Gerdes chose to call him while operating an automobile. There's no evidence to show that whatsoever. So, again, I think scope of employment is probably the stronger argument. But I also think, based on the fact that he is going to a second job, he's left his personal residence, it takes it out of the scope of time of his employment with St. Paul as well. The third factor is in regards to, is it actuated by a purpose to serve the master? This one, you know what, maybe a little bit, but I think it's more a personal service in this case. If you live in a residence owned by another, and it's the obligation of the owner of that residence to fix problems, maintain the property, then you're serving a self-interest. So I think looking at all the factors in this case, it's clear that the decision by the trial court should stand and the summary judgment should be affirmed. Thank you. Thank you. Rebuttal argument? Very briefly, Your Honors. I'm going to touch on St. Paul's arguments. But counsel just said, and I think the most important thing that I would note is that in order for respondeat superior to attach to the church, Larry Thorndike does not have to be liable at all. His liability or acting in the scope of his employment does not have to do with the church being liable for the acts of Gerdes as in the scope of his employment. Whether or not he's liable doesn't change the fact that he's an agent of the church and that he's Gerdes' employer and he's having this phone call with him. The question of St. Paul's liability is solely tied to whether Gerdes was acting in the scope of his employment. Larry Thorndike is not liable at all. It doesn't change the fact that Gerdes' conduct was in the scope of employment and that, therefore, the respondeat superior liability attaches. Second quick point, from Pine v. Wittner, an employee may combine personal business with the employer's business at the time of the negligence. Personal business in this case, driving to Bloomington. Employer's business on the phone regarding employment issues. I would argue there could be two proximate causes of an accident. I would posit that the phone call is one of them. Finally, quickly, it's to touch on counsel Thorndike's point regarding distraction. It's true, Matthew Gerdes testified that he was not distracted. I don't see why he would say that he was distracted, whether he knows he was distracted or not. I think distraction can be inferred as one who fails to yield at a yield sign at a wide open farm road. For those reasons, I would ask that the court reverse the summary judgment. Thank you. Okay, thank you. Thank you all. The case will be taken under advisement and a written decision shall issue. Thank you.